**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **LIGHTING RETROFIT INTERNATIONAL LLC** | * | |
| | * | **Case No. 19-cv-02751-GLR** |
| **Plaintiff / Counter-Defendant** | * | |
| **v.** | * | |
| **CONSTELLATION NEWENERGY, INC.,** *et al.* | * | |
| **Defendant / Counter-Plaintiff** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**ANSWER, AFFIRMATIVE DEFENSES, AND
FIRST AMENDED COUNTERCLAIM AGAINST LIGHTING RETROFIT
INTERNATIONAL, LLC**

Defendant / Counter-Plaintiff Constellation NewEnergy, Inc. ("Constellation"), through counsel, respectfully responds to each of the numbered paragraphs in the Complaint filed by Plaintiff / Counter-Defendant Lighting Retrofit International, LLC ("LRI"). Constellation further asserts counterclaims against LRI.

**RESPONSES TO THE ALLEGATIONS IN THE COMPLAINT**

1.    The Plaintiff, LRI, is a Delaware limited liability company engaged in the business of supplying and installing electrical and plumbing components for commercial construction projects. LRI regularly conducts business throughout several states and in the State of Maryland and is registered and licensed to do so.

        **ANSWER:**    Constellation admits that LRI is a Delaware limited liability company and is registered as a foreign LLC in the State of Maryland. Constellation lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations contained in Paragraph 1, and therefore denies them.

1

2.      The Defendant, Constellation NewEnergy, Inc. ("Constellation") is a Delaware corporation that lists its principal office as 1310 Point Street, 8th Floor, Baltimore, Maryland 21231. Constellation is registered to conduct business in the State of Maryland. Constellation is primarily engaged in the business of acting as a general contractor to commercial and government construction projects.

        **ANSWER:**    Constellation admits that it is a Delaware corporation with its principal

                        office in Baltimore, Maryland, and that Constellation is registered to

                        conduct business in the State of Maryland.   Constellation denies the

                        remainder of the allegations in Paragraph 2.  Constellation offers electric,

                        natural gas, renewable energy, solar, and home services, and provides on-

                        site generation, utility data mining, commodity consulting, and government

                        contracting services.

3.      The Defendant, Liberty Mutual Insurance Company ("Surety") is a foreign corporation, which, upon information and belief, is registered to -and regularly does- conduct business in the State of Maryland, but does not list a registered agent with the State of Maryland. Surety lists its principal office as 175 Berkeley Street, Boston, Massachusetts 02116.

        **ANSWER:**    Constellation lacks knowledge or information sufficient to form a belief as

                        to the truth or accuracy of the allegations contained in Paragraph 3.

4.      Pursuant to the agreement between the LRI and Constellation, both parties have consented to jurisdiction of this Court.  A copy of the Blanket Subcontract for Energy Projects and Services ("Blanket Subcontract") agreement between the parties is attached hereto and incorporated herein as **Exhibit A.**

        **ANSWER:**    The allegations in Paragraph 4 refer to a written document that speaks for

                        itself.   Constellation denies any allegations that differ from or

                        mischaracterize the referenced document.

5.      Additionally, under 28 U.S.C. § 1331, this Court has jurisdiction as the claim involves a question of Federal law.

        **ANSWER:**    The allegations in Paragraph 5 contain legal conclusions and LRI's

                        characterizations of the law to which no response is required.

6.   Venue is proper in this Court pursuant to 40 U.S.C. § 3133(b)(3) and the Blanket Subcontract which specifically confers venue in this Court.

**ANSWER:**   The allegations in Paragraph 6 refer to a written document that speaks for itself. Constellation denies any allegations that differ from or mischaracterize the referenced document. The allegations also contain legal conclusions and LRI's characterizations of the law to which no response is required.

7.   LRI and Constellation NewEnergy, Inc. ("Constellation") entered into a general, Blanket Subcontract dated December 9, 2014, wherein Constellation agreed to be a general contractor to LRI as its subcontractor. The Blanket Subcontract covered the general terms and conditions of the relationship between LRI and Constellation.

**ANSWER:**   The allegations in Paragraph 7 refer to a written document that speaks for itself. Constellation denies any allegations that differ from or mischaracterize the referenced document.

8.   Afterward and on or around February 26 and March 24, 2015, the parties entered into a scope of work agreement ("Scope of Work") for the provision and installation of various lighting and plumbing components on a project known as Federal Correctional Complex in Coleman, Florida (the "Project") for the U.S. Bureau of Prisons. A copy of the Scope of Work agreement between the parties is attached hereto and incorporated herein as **Exhibit B.**

**ANSWER:**   The allegations in Paragraph 8 refer to written documents that speak for themselves. Constellation denies any allegations that differ from or mischaracterize the referenced documents.

9.   The Scope of Work detailed the required specifications for the work LRI was directed to perform. *See* Exh. B.

**ANSWER:**   The allegations in Paragraph 9 refer to a written document that speaks for itself. Constellation denies any allegations that differ from or mischaracterize the referenced document. Constellation further denies that

LRI was "directed" to perform any work on the Project. The Scope of Work was a negotiated document between Constellation and LRI, and sets forth the terms and conditions of LRI's provision of materials and labor on the FCC Coleman project site.

10.     Pursuant to the terms of the Blanket Subcontract, the contract documents were to be interpreted as governing in the following order: (1) Subcontract Change Orders; (2) the Scope of Work; (3) the Blanket Subcontract. *See* Exh. A at§ 25.0.

**ANSWER:**     The allegations in Paragraph 10 refer to a written document that speaks for itself. Constellation denies any allegations that differ from or mischaracterize the referenced document.

11.     LRI commenced work on the Project in May 2015.

**ANSWER:**     Upon information and belief, the allegations in Paragraph 11 are admitted.

12.     LRI performed as agreed and directed.

**ANSWER:**     Constellation denies the allegations in Paragraph 12. LRI failed to complete the work required of it pursuant to the Blanket Subcontract and the Scope of Work, and it is Constellation's position that LRI has not fulfilled its obligations. As set forth in the Counterclaim below, Constellation has been forced to retain replacement subcontractors to perform LRI's scope of work on the Project.

13.     Substantial completion was achieved on or about August 5, 2016.

**ANSWER:**     Constellation denies the allegations in Paragraph 13. LRI failed to complete the work required of it pursuant to the Blanket Subcontract and the Scope of Work, and it is Constellation's position that LRI has not fulfilled its obligations. As set forth in the Counterclaim below, Constellation has been

forced to retain replacement subcontractors to perform LRI's scope of work on the Project.

14.     LRI's last day of work on the Project was March 29, 2019.

> **ANSWER:**     Constellation denies the allegations in Paragraph 14.  LRI failed to complete the work required of it pursuant to the Blanket Subcontract and the Scope of Work, and it is Constellation's position that LRI has not fulfilled its obligations.  As set forth in the Counterclaim below, Constellation has been forced to retain replacement subcontractors to perform LRI's scope of work on the Project.

15.     LRI is one hundred percent (100%) complete with its original scope of work on the Project, and has continued to perform additional work at Constellation's direction in a good faith effort to bring the project to a close.

> **ANSWER:**     Constellation denies the allegations in Paragraph 15.

16.     In spite of LRI' s efforts, Constellation still refuses to fully pay the remaining balance on the work and even refuses to pay Retainage that is indisputably owed to LRI.  Additionally, Constellation owes LRI for change order work and as well as an equitable adjustment to the Subcontract for work undertaken in good faith by LRI for certain problems well outside of LRI's scope of work.

> **ANSWER:**     Constellation denies the allegations in Paragraph 16.

17.     The total Subcontract value was $12,545,349.52.

> **ANSWER:**     Denied.    Constellation's records reflect that the total value of the Subcontract, inclusive of accepted change orders, is $12,545,349.62.

18.     The total paid to date to LRI is $11,870,007.31, leaving a balance owed of $675,342.21.

> **ANSWER:**     Constellation denies the allegations in Paragraph 18.  Constellation's records reflect that LRI has been paid $11,869,984.96.  For the reasons set forth in this Answer, Constellation's affirmative defenses, and in

Constellation's Counterclaim against LRI, Constellation denies that LRI is

entitled to a balance in any amount or under any theory.

19.    This outstanding balance is broken down as follows: The balance of the Subcontract value is: $76,031.79 (of this total, $55,652.45 will be credited back through Deductive Change Order Request #04), plus the balance of $599,310.52 for Retainage owed.  The total value of the outstanding Change Orders is $1,547,360.96, leaving $2,222,703.27 as the total amount due to LRI.  A chart showing this breakdown, along with supporting documents, is attached for your reference as **Exhibit C.**

   **ANSWER:**    Constellation denies the allegations in Paragraph 19.

20.    LRI's work was secured by a payment bond, Payment Bond No. 019049594 (the "Payment Bond"), which lists Constellation as principal and provides for Surety's obligation of "the protection of persons supplying labor and material" to the Project. A copy of the Bond is attached hereto and incorporated herein as **Exhibit D.**

   **ANSWER:**    It is admitted that Constellation, as principal, and Liberty Mutual Insurance

   Company, as surety, executed and delivered the payment bond.  The

   payment bond is a writing that speaks for itself.  Constellation denies any

   allegations that differ from or mischaracterize the referenced document.

21.    On July 31, 2019, LRI provided notice on the Payment Bond pursuant to the Miller Act. The notice was received by Surety on August 9, 2019. Copies of the Bond Notice, its attachments and return receipt cards are attached hereto and incorporated herein as **Exhibit E.**

   **ANSWER:**    The allegations in Paragraph 21 refer to a written document that speaks for

   itself.  Constellation denies the contents of the letter, and further denies that

   LRI has satisfied all conditions precedent to its recovery under the Payment

   Bond and denies that it owes anything to LRI.

22.    Despite notice, despite the obligations in the Payment Bond, and despite Constellation admitting it owed payment to LRI, $2,222,703.27 still remains due and owing LRI.

   **ANSWER:**    Constellation denies the allegations in Paragraph 22.

23.    LRI's last day of work was March 29, 2019.

**ANSWER:** This allegation is a repeat of the allegations in Paragraph 14. Constellation incorporates it answer to Paragraph 14 of the Complaint.

## Count I
### 40 U.S.C. 3131, *et seq.*, the "Miller Act"

24. LRI incorporates and realleges the foregoing paragraphs as though set forth fully herein, and further alleges the following:

    **ANSWER:** Constellation adopts and incorporates by reference its answers to the preceding paragraphs of the Complaint.

25. Upon information and belief, the prime contract between Constellation and the owner of the Project required payment security in the form of the Payment Bond.

    **ANSWER:** Constellation admits the allegations in Paragraph 25.

26. Surety executed the Payment Bond to ensure payment to all subcontractors such as LRI. *See* Exh. D.

    **ANSWER:** The allegations in Paragraph 26 refer to a written document that speaks for itself. Constellation denies any allegations that differ from or mischaracterize the referenced document.

27. Pursuant to the terms of the Miller Act and the Payment Bond, LRI provided Notice to Surety and Moxy and the general contractor, Constellation, of LRI's claim for payment. *See* Exh. E.

    **ANSWER:** The allegations in Paragraph 27 contain legal conclusions to which no response is required. The allegations also reference the contents of a document that speaks for itself. Constellation denies the contents of the letter, and further denies that LRI has satisfied all conditions precedent to its recovery under the Payment Bond and denies that it owes anything to LRI.

28. LRI' s last day of work on the Project was March 29, 2019 and it has been more than 90 days since LRI last performed work under the Subcontract.

**ANSWER:**    Constellation admits that it has been more than 90 days since LRI last performed work under the Subcontract. As set forth above in response to Paragraph 14 of the Complaint, LRI failed to complete the work required of it pursuant to the Blanket Subcontract and the Scope of Work. Constellation has been forced to retain replacement subcontractors to perform LRI's scope of work on the Project.

29.    Despite performing as agreed, LRI has not been paid in full.

**ANSWER:**    Constellation denies the allegations in Paragraph 29.

30.    Despite performing as agreed and fulfilling all of the conditions for payment, Surety has refused to remit full payment to LRI.

**ANSWER:**    Constellation denies the allegations in Paragraph 30.

31.    Pursuant to the Miller Act, LRI now sues on the Payment Bond.

**ANSWER:**    Constellation admits that LRI is attempting to sue under the Miller Act. Constellation denies, however, that LRI is entitled to the relief that it seeks in the Complaint.

Constellation denies that LRI has been injured based upon any legal theory or in any amount, denies that Plaintiffs are entitled to any monetary relief or award of fees, interest, or costs, and further denies any remaining allegations contained in the WHEREFORE clause in Count I of the Complaint.

**Count II**
**Breach of Contract**

32.    LRI incorporates and realleges the foregoing paragraphs as though set forth fully herein, and further alleges the following:

**ANSWER:**    Constellation adopts and incorporates by reference its answers to the preceding paragraphs of the Complaint.

33.    Despite performing as agreed, LRI has not been paid in full.

**ANSWER:**    Constellation denies the allegations in Paragraph 33.

34.    Constellation's failure to remit payment as agreed is a material breach of the agreements between the parties.

**ANSWER:**    Constellation denies the allegations in Paragraph 34.

Constellation denies that LRI has been injured based upon any legal theory or in any amount, denies that Plaintiffs are entitled to any monetary relief or award of fees, interest, or costs, and further denies any remaining allegations contained in the WHEREFORE clause in Count II of the Complaint.

## Count III
### 31 U.S.C. 3901, *et seq.,* the "Prompt Payment Act"

35.    LRI incorporates and realleges the foregoing paragraphs as though set forth fully herein, and further alleges the following:

**ANSWER:**    Constellation adopts and incorporates by reference its answers to the preceding paragraphs of the Complaint.

36.    LRI has performed as agreed.

**ANSWER:**    Constellation denies the allegations in Paragraph 36.

37.    The agreements between the parties are subject to the Prompt Payment Act.

**ANSWER:**    The allegations in Paragraph 37 contain legal conclusions to which no response is required.

38.    LRI has timely submitted good and proper invoices for the work it provided.

**ANSWER:**    Constellation denies the allegations in Paragraph 38.

39.    Despite performing as agreed, LRI has not been paid in full.

**ANSWER:**   Constellation denies the allegations in Paragraph 39.

40.   Constellation's failure to remit payment as agreed is a material breach of the agreements between the parties.

**ANSWER:**   Constellation denies the allegations in Paragraph 40.

41.   LRI is entitled to interest payment pursuant to the Prompt Payment Act.

**ANSWER:**   Constellation denies the allegations in Paragraph 41.

Constellation denies that LRI has been injured based upon any legal theory or in any amount, denies that Plaintiffs are entitled to any monetary relief or award of fees, interest, or costs, and further denies any remaining allegations contained in the WHEREFORE clause in Count III of the Complaint.

## Count IV
## Quantum Meruit

42.   LRI incorporates and realleges the foregoing paragraphs as though set forth fully herein, and alternatively alleges the following:

**ANSWER:**   Constellation adopts and incorporates by reference its answers to the preceding paragraphs of the Complaint.

43.   LRI's performance of services conferred a substantial and material benefit to Constellation for which LRI has not received full compensation.

**ANSWER:**   Constellation denies the allegations in Paragraph 43.

44.   Constellation accepted LRI's services and directed the same.

**ANSWER:**   Constellation denies the allegations in Paragraph 44.

45.   LRI's services were provided under such circumstances that reasonably notified Constellation that LRI expected to be compensated for its performance.

**ANSWER:**   Constellation denies the allegations in Paragraph 45.

46.   Despite LRI's performance, Constellation has not compensated LRI in full.

**ANSWER:**    Constellation denies the allegations in Paragraph 46.

Constellation denies that LRI has been injured based upon any legal theory or in any amount, denies that Plaintiffs are entitled to any monetary relief or award of fees, interest, or costs, and further denies any remaining allegations contained in the WHEREFORE clause in Count IV of the Complaint.

**Count V**
**Unjust Enrichment**

47.    LRI incorporates and realleges the foregoing paragraphs as though set forth fully herein, and alternatively alleges the following:

**ANSWER:**    Constellation adopts and incorporates by reference its answers to the preceding paragraphs of the Complaint.

48.    LRI performed valuable services for Constellation.

**ANSWER:**    Constellation denies the allegations in Paragraph 48.

49.    LRI's performance of services conferred a substantial and material benefit to Constellation for which LRI has not received full compensation.

**ANSWER:**    Constellation denies the allegations in Paragraph 49.

50.    Constellation was aware of and accepted the benefit of LRI's services and directed the same.

**ANSWER:**    Constellation denies the allegations in Paragraph 50.

51.    Constellation's acceptance and retention of the benefit of LRI's performance without payment of the value of the same is inequitable.

**ANSWER:**    Constellation denies the allegations in Paragraph 51.

Constellation denies that LRI has been injured based upon any legal theory or in any amount, denies that Plaintiffs are entitled to any monetary relief or award of fees, interest, or costs, and further denies any remaining allegations contained in the WHEREFORE clause in Count V of the Complaint.

## GENERAL DENIAL AND RESERVATION OF RIGHTS

Constellation denies all allegations in the Complaint not expressly admitted, as well as all requests contained in LRI's prayers for relief.  Constellation reserves the right to amend or supplement its responses to the Complaint.

## AFFIRMATIVE DEFENSES

Constellation relies upon the following affirmative defenses to the claims asserted in the Complaint, without assuming the burden of proof on any such defense that would otherwise rest on LRI.  Constellation reserves the right to amend, supplement, or add to these affirmative defenses as information is gathered through discovery and additional information is compiled.

1.      On the basis of the facts pled in Constellation's answers to Paragraphs 1 through 51, the contracts between LRI and Constellation, the allegations in the Counterclaim set forth below, and other documents of record in this action, LRI fails to state a claim upon which relief can be granted.  LRI is not entitled to the relief, in whole or in part, that it seeks in the Complaint under any theory.

2.      The acts and statements of Constellation were fair and reasonable and were performed in good faith based on the terms of the Blanket Subcontract, the Scope of Work, other written documents exchanged between the parties, and all the relevant facts known to Constellation.  Constellation did not directly or indirectly perform any acts that would constitute a violation of LRI's rights.  LRI is not entitled to any damages whatsoever.

3.      Constellation denies that LRI suffered any cognizable injury or damages and, if any damages were incurred by LRI, those damages are *de minimis*, remote, speculative, and/or transient.

12

4.      On the basis of the facts pled in Constellation's answers to Paragraphs 1 through 51, the contracts between LRI and Constellation, the allegations in the Counterclaim set forth below, and other documents of record in this action, LRI failed to perform its material obligations under the Blanket Subcontract and the Statement of Work.  Accordingly, neither Constellation nor the surety have any liability to LRI.

5.      On information and belief, LRI failed to perform some or all of its obligations to Constellation pursuant to the Blanket Subcontract and the Statement of Work.  Accordingly, neither Constellation nor the surety are obligated to LRI under the Payment Bond.

6.      On the basis of the facts pled in Constellation's answers to Paragraphs 1 through 51, the contracts between LRI and Constellation, the allegations in the Counterclaim set forth below, and other documents of record in this action, Constellation incurred damages by reason of LRI's conduct and is entitled to a setoff and/or recoupment against any damages to which LRI claims it is entitled.

7.      On the basis of the facts pled in Constellation's answers to Paragraphs 1 through 51, the contracts between LRI and Constellation, the allegations in the Counterclaim set forth below, and other documents of record in this action, LRI's claims are barred, in whole or in part, by the doctrine of estoppel.

8.      On the basis of the facts pled in Constellation's answers to Paragraphs 1 through 51, the contracts between LRI and Constellation, the allegations in the Counterclaim set forth below, and other documents of record in this action, Plaintiff's claims are barred and/or its damages must be reduced to the extent it has failed to mitigate its damages.

9.      On the basis of the facts pled in Constellation's answers to Paragraphs 1 through 51, the contracts between LRI and Constellation, the allegations in the Counterclaim set forth

below, and other documents of record in this action, LRI failed to perform all conditions precedent to recovery under the terms of the Payment Bond and/or the Miller Act, and accordingly Constellation has no liability to LRI.

10.     Upon information and belief, some or all of the claims asserted in the Complaint are barred by the applicable statute(s) of limitation.

## ADDITIONAL DEFENSES

Constellation reserves the right to rely upon such other defenses as may become available or apparent during the course of discovery or other proceedings in this action.  Constellation reserves the right to amend its Answer to assert such defenses.

## <u>FIRST AMENDED COUNTERCLAIM AGAINST LRI</u>

Constellation NewEnergy, Inc. ("Constellation") asserts the following Counterclaim against Lighting Retrofit International, LLC ("LRI") and alleges as follows:

1.     Constellation is a Delaware corporation with its principal office in Baltimore, Maryland.  Constellation offers electric, natural gas, renewable energy, solar, and home services, as well as provides on-site generation, utility data mining, commodity consulting, and government contracting services.

2.     LRI is a Delaware limited liability company, with its principal place of business in Gambrills, Maryland, and is primarily engaged in the business of supplying and installing electrical and plumbing components for commercial construction projects.

3.     On or about December 12, 2014, Constellation entered into Order No. DJBP0700CCSESPC007 under Contract No. DE-AM36-09GO29033 (the "Prime Contract") with the Federal Bureau of Prisons (the "BOP") to serve as the prime contractor for the implementation of various energy cost savings measures ("ECMs") at the Coleman Federal Correctional Complex

("FCC Coleman") plus a nineteen (19) year performance period following implementation of the cost savings measures (the "Project").

4.      On or about December 9, 2014, Constellation and LRI entered into a design-build Blanket Subcontract Agreement for Energy Projects and Services (the "Blanket Subcontract").  A copy of the Blanket Subcontract is attached as **Exhibit 1**.

5.      On or about March 24, 2015, Constellation and LRI entered into a design-build Scope of Work (the "SOW") pursuant to the Blanket Subcontract.  A copy of the SOW is attached as **Exhibit 2**.

6.      For purposes of this Counterclaim, the Blanket Subcontract and the SOW shall be collectively referred to as the "Subcontract Documents."

7.      The Subcontract Documents contemplated that LRI would "provide final design and all labor, materials coordination, permits, shipping cost, storage cost, trash disposal, taxes, tools, specialized equipment and full-time onsite supervision necessary to implement a fully functional project" with respect to two ECMs: (1) the retrofit installation of linear LED lamps, high mast LED retrofit kits, LED street lights, LED high bay lighting, and other lighting-oriented energy conservation measures within FCC Coleman ("ECM-1"); and (2) the retrofit installation of toilets, urinals, faucets, showerheads, and I-CON electronic control valves with a centralized control station within FCC Coleman's United States Penitentiary 1 General Housing Units and Special Housing Units ("ECM-2").  *See* Exhibit 2 at pp. 1-5.

8.      The Blanket Subcontract provides the following warranty provision with respect to LRI's provision of materials and installation services on the Project:

> [LRI] warrants that . . . (b) all equipment will be free from defects and installed in accordance with manufacturer's specifications . . . . [LRI] will obtain vendor/manufacturer/supplier warranties and pass through all such warranties to both Constellation and Constellation's

> Customers. [LRI] shall, if available, with the prior written approval of Constellation, obtain extended warranties, and pass through all such extended warranties to both Constellation and Constellation's Customers. [LRI] shall, at its sole expense interface, and act as liaison with [LRI]-purchased materials manufacturers, vendors, and suppliers to resolve problems and pursue warranty claims on behalf of Constellation and Constellation's Customers. In the event a manufacturer, vendor, or supplier of such materials ceases operations or is otherwise unable to meet its warranty obligations to Constellation or Constellation's Customers, [LRI] agrees to provide or secure, at its sole expense, for Constellation and Constellation's Customers, all such warranties including but not limited to any required spare parts.

*See* Exhibit 1 § 6.8.

9.      The Blanket Subcontract further provides that various remedies were available to Constellation in the event of a material breach of the Blanket Subcontract by LRI, including the right to arrange substitute performance, to terminate the Subcontract, and to recover from LRI all costs incurred by Constellation resulting from such breach.

10.      Specifically, the Blanket Subcontract provides that LRI, in the event that services and materials provided by LRI on the Project do not comply with the warranties, is obligated to take the following remedial action "at its sole cost and expense":

> (a) re-perform the services, or repair or replace the equipment, in a satisfactory manner that conforms to the terms of the Subcontract Documents;

> (b) pay Constellation any money damages that Constellation owes as a result of nonconformance and refund the portion of the cost hereunder which is attributable to such nonconformance;

> (c) if Constellation chooses to correct the breach by re-performing the services or repairing or replacing the equipment, (by itself or through another subcontractor), pay Constellation any expenses Constellation incurs itself or pays to a third party.

*See* Exhibit 1 § 6.8.

11.     Section 7.1.5 of the Blanket Subcontract additionally provides that Constellation has the right, upon any material breach of the Blanket Subcontract, to the following remedies:

>    (a)     Supply workers, materials, equipment and other facilities as Constellation deems necessary for the completion of LRI's work or any part thereof which LRI failed to complete or perform, and charge the cost thereof to LRI;

>    (b)     Contract with one or more additional contractors to perform LRI's work if Constellation believes it will provide the most expeditious completion of the total work and charge the cost thereof to LRI;

>    (c)     Withhold payment of any moneys due to LRI pending corrective action in amounts sufficient to cover losses and compel performance to the extent required by and to the satisfaction of Constellation; and

>    (d)     Terminate the Blanket Subcontract.

*See* Exhibit 1 § 7.1.5

12.     Section 7.4 of the Blanket Subcontract additionally provides that Constellation "may furnish those materials, equipment and/or employ such works or subcontractors, as Constellation deems necessary or desirable to maintain the orderly progress of the work.  All costs incurred by Constellation in performing [LRI's] work, including but not limited to reasonable overhead, profit and reasonable attorneys' fees and expenses, shall be deducted from any moneys due or to become due to [LRI].  [LRI] shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the price payable hereunder."  *See* Exhibit 1 § 7.4.

### ECM-1 - Lighting

13.     The Subcontract Documents required LRI, to among other things, retrofit each existing Metal Halide ("MH") and High Pressure Sodium ("HPS") high mast fixture within the FCC Coleman campus with Global Tech Solstice GTSOL5498-4X LED retrofit kits.  These Global Tech Solstice retrofit kits were intended to fit inside the existing high mast fixtures for ease of installation.

14.    LRI executed the SOW on or about March 24, 2015, following a design process in which LRI was a participant, and in full agreement with its contractual duties regarding the installation of the product manufactured by Global Tech LED, LLC ("Global Tech").

15.    In accordance with Section 6.8 of the Blanket Subcontract, LRI provided Constellation and FCC Coleman with a 10-year / 50,000 hour warranty from Global Tech.

16.    Following execution of the SOW by the parties, LRI began installing the Global Tech LED retrofit kits on the Project.

17.    The Global Tech LED lighting as installed by LRI repeatedly and regularly failed to the point that FCC Coleman has deemed the significant widespread failures of the Global Tech high mast LED products as an emergency security concern that requires immediate attention.

18.    The repeated failures of the Global Tech LED lighting had multiple likely causes, including flaws in the design, materials, and components of the Global Tech LED units, and improper or deficient practices by LRI in connection with the installation of the Global Tech LED units. These improper and deficient installation practices constituted a breach by LRI of its performance obligations under the Subcontract Documents.

19.    In late 2018, Global Tech became insolvent and liquidated its assets and, as a result has "cease[d] operations or is otherwise unable to meet its warranty obligations to Constellation and Constellation's customers" as contemplated in Section 6.8 of the Blanket Subcontract.

20.    As a result, the Blanket Subcontract expressly requires LRI to honor at its own cost the warranty obligations originally provided by Global Tech.  *See* Exhibit 1 § 6.8 ("In the event a manufacturer, vendor, or supplier of such materials ceases operations or is otherwise unable to meet its warranty obligations to Constellation or Constellation's Customers, [LRI] agrees to

provide or secure, at its sole expense, for Constellation and Constellation's Customers, all such warranties including but not limited to any required spare parts.")

21.    Constellation has repeatedly communicated to LRI its obligations pursuant to the Subcontract Documents to honor the high mast lighting warranties, which culminated on July 15, 2019 when Constellation transmitted to LRI a Notification of Breach.  A copy of the July 15, 2019 correspondence is attached as **Exhibit 3**.

22.    LRI has flatly refused to honor the warranty as required by the Subcontract Documents in material breach of its obligations under the Subcontract Documents.

23.    Following the Notification of Breach and LRI's refusal to remedy said breach, Constellation exercised its rights under Section 7.1.5(b) of the Blanket Subcontract by contracting with an additional contractor, Aelux, LLC, a division of WESCO Distribution, Inc. (referred to in this Counterclaim as "Aelux"), to perform LRI's work under the Subcontract Documents.  A copy of the Scope of Work with Aelux (collectively the "Replacement Lighting Subcontract") is attached as **Exhibit 4**.

24.    The Scope of Work under the Replacement Lighting Subcontract was executed on September 20, 2019, and requires Aelux to replace the existing high mast lighting fixtures at the FCC Coleman campus with a total of Seven Hundred Twenty Eight (728) high mast fixtures that meet the required performance and code specifications required under the Prime Contract between Constellation and the BOP.  *See* Exhibit 4.

25.    The original contract price on the Replacement Lighting Subcontract for the work, materials, and equipment required to remedy LRI's breach of the Subcontract Documents was $1,275,517.00.  *See* Exhibit 4 at p. 8.

26.    Aelux subsequently completed an on-site audit of the work required to complete LRI's scope of work.  The cost associated with the audit and the anticipated additional work are approximately $200,000.00.

27.    During the audit, Aelux identified additional work and materials – over and above the work and materials contemplated in the Replacement Lighting Subcontract – required to remedy LRI's breach of the Subcontract Documents.  The value of the additional work and materials will be embodied in an upcoming change order to the Replacement Lighting Subcontract totaling approximately $200,000.00, as noted above, as a direct result of LRI's breach.

28.    The costs attributable to the Replacement Lighting Subcontract, inclusive of the audit, the work set forth in the Replacement Lighting Subcontract, plus the additional work and materials identified in the site audit by Aelux, are chargeable to LRI pursuant to Sections 6.8 and 7.1.5 of the Blanket Subcontract.

29.    In addition to the costs of the Replacement Lighting Subcontract, the Global Tech LED lighting installed by LRI on the Project has repeatedly and regularly failed to the point that FCC Coleman has deemed the significant widespread failures of the Global Tech high mast LED products as an emergency security concern that requires immediate attention.

30.    In order to mitigate the effects of the Global Tech product failures and to avoid any contractual issues between Constellation and the BOP while LRI's breach is resolved, Constellation was forced to procure – at its own expense – emergency temporary lighting for use at FCC Coleman.

31.    Constellation expended $163,233.12.84 in equipment rentals for the emergency lighting, and $70,503.22 on fuel costs associated with the emergency lighting generators for a current total of $233,736.34.  Constellation will continue to incur additional costs associated with

emergency lighting equipment rental and fuel costs while Aelux performs its services under the Replacement Lighting Subcontract to remedy LRI's material breach.

32.    Constellation's costs associated with emergency lighting equipment rental and fuel costs are recoverable against LRI pursuant to Sections 6.8 and 7.1.5 of the Blanket Subcontract.

33.    Constellation is entitled to withhold further payments to LRI to cover Constellation's costs in connection with remediating LRI's breach pursuant to Section 7.1.5(c) of the Blanket Subcontract.

34.    Constellation is also entitled to reasonable overhead, profit, attorneys' fees, and expenses related to LRI's breach pursuant to Section 7.4 of the Blanket Subcontract.

35.    Constellation is additionally entitled to liquidated damages under Section 3.5 of the Blanket Subcontract as a result of the continued and ongoing delay resulting from LRI's failure to complete the work required of it under the Subcontract Documents.

**ECM-2 - Plumbing**

36.     The Subcontract Documents additionally required LRI to install plumbing cost savings measures at FCC Coleman, including high-efficiency fixture retrofits (toilets, urinals, faucets, showerheads, and non-domestic fixtures), as well as I-CON electronic control valves in several housing units on the FCC Coleman campus.  *See* Exhibit 2 at pp. 3 – 5.

37.    The purpose of the control valves is, among other things, to allow fixtures to operate at lower volumes and flow rates, and to provide an important lockout function that prevents abuse of the water fixtures, such as intentional flooding of housing tiers, by inmates.

38.    ECM-2 requires the installation of a centralized control station running I-CON's Envisage software within FCC Coleman's "inside the fence" control area that, when properly

installed, would allow FCC Coleman personnel to monitor and remotely manage the facility's electronic plumbing control valves.

39.    LRI has failed to install the energy cost savings measures in material breach of the Subcontract Documents.

40.    Since LRI began work on ECM-2, more than 100 I-CON controllers have failed throughout various housing units (including the SHUs), resulting in repeated outages of the toilets, sinks, showers and other fixtures in those housing units.

41.    In addition, large portions of the work required under the Subcontract Documents – including but not limited to the conduits and plumbing in various restrooms, kitchens and other food service areas, education rooms, health services, numerous individual inmate cells, and other areas of FCC Coleman – are incomplete, installed with poor workmanship, or installed in a manner that does not comply with contractual requirements, including but not limited to the Bureau of Prison's Technical Design Guidelines.

42.    In addition, a number of cost savings measures required under the Subcontract Documents were simply never installed by LRI.

43.    These deficiencies in the work performed by LRI are just a few examples of the issues encountered with respect to ECM-2.  The current list of outstanding issues related to LRI's work in ECM-2 under the Subcontract Documents, as reported by FCC Coleman personnel and observed by Constellation employees on the FCC Coleman jobsite, are enumerated in the field observation report ("FOR") log attached as **Exhibit 5**.[1]

---

[1] Exhibit 5 to Constellation's initial Answer and Counterclaim is a PDF-formatted excerpt of the FOR log.  Subsequent versions of the FOR log were produced during discovery in native format. Constellation reserves the right to supplement the list of outstanding issues if additional deficiencies are discovered as construction activities at FCC Coleman continue.

44.    LRI's failures have resulted in a significant operational burden for the BOP, and the BOP has communicated to Constellation that it classifies a significant portion of these outstanding issues as emergency issues that must be corrected immediately.

45.    LRI is and has been well aware of these critical BOP concerns, about which Constellation has regularly and repeatedly notified LRI and demanded remediation consistent with the requirements of the Subcontract Documents.  The failures / installation issues were most recently communicated to LRI in a formal Notification of Breach to LRI dated October 23, 2019. A copy of the Notification of Breach is attached as **Exhibit 6**.

46.    Following the Notification of Breach, LRI has refused to cure these material breaches by mobilizing to repair or replace the non-conforming products, completing the incomplete work, or otherwise engaging in the full complement of services that LRI agreed to undertake in the Subcontract Documents.

47.    Due to the failure by LRI to cure its material breach of the Subcontract Documents, Constellation has taken immediate action to remedy these issues by locating a replacement plumbing subcontractor to complete LRI's scope of work with respect to ECM-2.

48.    As with the replacement subcontract on ECM-1, the replacement plumbing subcontractor – once identified and retained – will evaluate the full scope of plumbing labor, materials, equipment, and services necessary to remediate LRI's material breach of the Subcontract Documents.

49.    Because the work being undertaken by the replacement plumbing subcontractor remains ongoing, the full amount of damages are unknown at this time.  However, the total cost for Constellation to retain the replacement plumbing subcontractor to complete LRI's scope of work with respect to ECM-2 will likely exceed $1,500,000.00, subject to additional costs and

expenses as identified by the replacement plumbing contractor in its post-retention audit of the FCC Coleman campus.

50.    The costs incurred by Constellation to retain the third-party subcontractor are chargeable to LRI pursuant to Sections 6.8 and 7.1.5(b) of the Blanket Subcontract.

51.    Moreover, Constellation is entitled to withhold further payments to LRI to cover Constellation's costs in connection with remediating LRI's breach pursuant to Section 7.1.5(c) of the Blanket Subcontract.

52.    Constellation is entitled to reasonable overhead, profit, attorneys' fees, and expenses related to this breach pursuant to Section 7.4 of the Blanket Subcontract.

53.    Constellation is also entitled to liquidated damages against LRI under Section 3.5 of the Blanket Subcontract due to the continued and ongoing delay resulting from LRI's failure to complete the work that it is contractually obligated to fulfill.

**COUNT I**
**Breach of Contract Against LRI**

54.    The preceding allegations are incorporated as if stated fully herein.

55.    The Blanket Subcontract and SOW collectively constitute a valid and enforceable contract that, among other things, required LRI to furnish and install various lighting and plumbing cost savings measures on the Project at FCC Coleman.

56.    LRI breached the Blanket Subcontract and the SOW for, among other things, failing to comply with the warranty obligations described in Blanket Subcontract Section 6.8 pertaining to high mast LED products originally supplied by Global Tech with respect to ECM-1, and failing properly to install the Global Tech LED products.

57.     LRI breached the Blanket Subcontract and the SOW for, among other things, failing to install the plumbing fixtures and electronic plumbing control systems as required in and in the manner prescribed by ECM-2.

58.     Constellation has incurred substantial damages as stated herein and in an amount to be proven at trial as a direct and proximate result of LRI's material breach of its obligations under the Subcontract Documents.

59.     As a result of the foregoing breaches by LRI of its obligations under the Subcontract Documents, Constellation incurred substantial damages due to LRI's deficient performance, including damages incurred when Constellation was forced to engage replacement and/or augmentation subcontractors to complete aspects of LRI scope of work, and to employ emergency remedial measures to ensure institutional safety at FCC Coleman.

60.     Furthermore, LRI's numerous breaches of its obligations under the Subcontract Documents caused substantial delays in completion of the work, resulting in additional damages to Constellation, including liquidated damages.

61.     In addition, LRI's delays are undermining Constellation's ability to complete the implementation phase of the Prime Contract in a timely manner, resulting in additional damages and lost profits.

62.     Moreover, LRI's breaches of the Subcontract Documents have compromised Constellation's performance under the Prime Contract and have created emergency security and safety concerns for the employees and residents of FCC Coleman.  All damages incurred by Constellation as a result of LRI's acts, omissions, and breaches are recoverable in full from LRI.

63.     Constellation is entitled to recover its damages from LRI pursuant to the Subcontract Documents and applicable law.

WHEREFORE, Defendant Constellation NewEnergy, LLC requests that the Court:

1.      Deny all relief sought by LRI;

2.      Dismiss LRI's claims with prejudice;

3.      Enter a judgment in favor of Constellation and against LRI for any actual monetary damages in an amount to be proven at trial;

4.      Enter a judgment in favor of Constellation and against LRI for liquidated damages resulting from the delays associated with LRI's material breach of the Subcontract Documents;

5.      Enter a judgment in favor of Constellation and against LRI for the recovery by Constellation of pre-judgment and post-judgment interest on its counterclaim in accordance with applicable law;

6.      Enter a judgment in favor of Constellation and against LRI for the recovery by Constellation for its attorneys fees' incurred in this action as permitted by law;

7.      Tax the costs of this action to LRI;

8.      Award Constellation such other and further relief as to which it is entitled under the law and the facts and which the Court deems just and proper.


Dated: February 17, 2021                     __/s/  *Craig R. Haughton*_____
                                             Craig R. Haughton (Fed. Bar No. 28585)
                                             **MCGUIREWOODS LLP**
                                             1251 Avenue of the Americas, 20th Floor
                                             New York, NY 10020
                                             (212) 548-2157
                                             chaughton@mcguirewoods.com

                                             ***Counsel for Defendant***
                                             ***Constellation NewEnergy, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2021, copies of the foregoing Answer and Affirmative Defenses to the Complaint and First Amended Counterclaim were electronically filed through the CM/ECF system and served on all counsel of record in this proceeding.

 /s/  *Craig R. Haughton*
Craig R. Haughton