IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LIGHTING RETROFIT INTERNATIONAL, LLC** | * | |
| Plaintiff/Counter-Defendant, | * | |
| v. | * | Civil Case No. 19-cv-02751-SAG |
| **CONSTELLATION NEWENERGY, INC.,** | * | |
| Defendant/Counter-Plaintiff. | * | |

### MEMORANDUM OPINION

Lighting Retrofit International, LLC ("LRI") commenced this action against Constellation NewEnergy, Inc. ("Constellation") for claims related to Constellation's alleged breach of the parties' subcontract to upgrade lighting and plumbing fixtures at a federal prison in Florida. ECF 1. Constellation counterclaimed, asserting that LRI breached the subcontract. ECF 53. The Court previously held a bench trial focused exclusively on the parties' lighting-related disputes and entered judgment in favor of Constellation on March 1, 2023. ECF 138. Since then, the case has proceeded on the parties' plumbing-related disputes and now pending are the parties' motions for partial summary judgment, ECF 177, 180, and Constellation's motion to exclude LRI's proffered expert opinions, ECF 174. The matters have been fully briefed, *see* ECF 192, 194, 202, 209, 212, 213, and no hearing is necessary, *see* Loc. R. 105.6 (D. Md. 2023), but the Court at this juncture resolves only Constellation's motion to exclude. For the following reasons, the Court DENIES Constellation's motion.

I.   **FACTUAL BACKGROUND**

The following facts are not in dispute. In December, 2008, Constellation contracted with the federal Bureau of Prisons ("BOP") to provide "conservation and renewable energy services for

Federal facilities." ECF 180-5 at 6.[1] Pursuant to that contract, Constellation and BOP entered into a task order for the installation of several energy conservation measures ("ECMs") at the Coleman Correctional Complex ("FCC Coleman") in Coleman, Florida. ECF 67. Two ECMs became relevant to this litigation: ECM-1, which involved upgrades to the lighting system at FCC Coleman, and ECM-2, which involved upgrades to the facility's plumbing system. *See id.* at 7.

On or about December 9, 2014, LRI and Constellation executed a subcontract for "energy projects and services," at FCC Coleman (the "Subcontract"). ECF 185-3 at 2. Constellation and LRI later executed a detailed scope of work ("SOW") for ECM-1 and ECM-2. *See* ECF 185-4. As relevant here, the SOW provided that LRI would retrofit various water fixtures and install I-CON electronic control valves at FCC Coleman with a centralized control station within certain housing units. *Id.* at 2–6. The SOW valued the Subcontract at $5.1 million and set a completion date for all lighting and plumbing work by December 18, 2015. *Id.* at 8. After BOP submitted several change orders, the value of the Subcontract grew to over $12.5 million, and the completion date became March 31, 2019. *See* ECF 185-8; ECF 185-9; ECF 185-10; ECF 185-11; ECF 180 at Ex. 12.[2]

In mid-2015, LRI commenced work at FCC Coleman. ECF 64 ¶ 18. Myriad issues related to lighting and plumbing work arose soon thereafter. *See id.* ¶ 19; ECF 185-1 at 6. Constellation and LRI failed to resolve many of them, and LRI eventually left the job site. *See* ECF 178-2 at 21:2–6 (Dep. Testimony of E. Elam). On October 23, 2019, Constellation sent LRI a notification of breach with respect to ECM-2, for among other reasons, failing "to furnish the labor, materials, equipment, and services necessary to install the [I-CON] control system . . . in strict accordance

---

[1] This Court uses the ECF page numbers in the header at the top of the page.

[2] The fifth and final change order was executed on November 12, 2018. ECF 180 at Ex. 12.

with the SOW and Subcontract requirements." ECF 185-1 at 3. Constellation also demanded that LRI cure "numerous outstanding issues" identified in a field operation report ("FOR") log that Constellation received from BOP. *Id.* at 4. In response, LRI claimed that it completed 99% of the plumbing work and disavowed responsibility for the FOR-related issues Constellation identified in its letter. ECF 185-2 at 2–4.

As a result of this impasse, Constellation hired a new subcontractor, ECM Holding Group, LLC a/k/a Aqua ("Aqua"), on May 15, 2020, to complete the remaining ECM-2 work. ECF 203-1. Constellation paid Aqua over $2 million for the time and materials Aqua expended to complete the work and now seeks to recover those payments from LRI, plus a 15% markup for overhead and a 10% markup for profit.[3] ECF 180-8 at 2, 8.

## II. PROCEDURAL HISTORY

After this Court entered judgment in favor of Constellation for the parties' lighting-related disputes, ECF 138, the parties re-opened discovery on the plumbing-related issues. While that discovery was ongoing, the Court issued a Consent Order resolving LRI's remaining affirmative claims. ECF 169. The remaining plumbing disputes relate solely to Constellation's amended counterclaim and LRI's defenses thereto. Pursuant to Federal Rules of Civil Procedure 26(a)(2)(C) and 26(e)(1), Constellation disclosed David Benham as a hybrid fact and expert witness on the plumbing-related issues on November 10, 2023, ECF 192-1, and LRI disclosed Jeff Sammons, Dan Ruse, and Eric Elam as rebuttal hybrid witnesses on November 24, 2023, ECF 176-1. Constellation now seeks to exclude the opinions of LRI's three proffered experts ahead of trial, contending that LRI's Rule 26(2)(A)(C) rebuttal disclosure (1) contains inadmissible legal

---

[3] Though not relevant for this motion, Constellation also seeks $4,768,500 in liquidated damages. ECF 180-16.

conclusions about the parties' Subcontract; (2) proffers expert analysis that relies on secondhand knowledge of the facts of this case or inadmissible hearsay; and (3) does not comply with Rule 26(a)(2)(C)(ii) because it fails to identify which expert will testify to which of over thirty-nine opinions set forth in the disclosure.[4] ECF 175. Without addressing the Rule 26 deficiency, LRI contends that its disclosure simply responds to the same kinds of legal conclusions and factual recitations that LRI alleges are in Constellation's expert disclosure.[5] The Court begins first with Constellation's Rule 26(a)(2) argument.

### III. LEGAL STANDARD

A party must disclose to its adversary the identity of any witness it plans to call at trial for the presentation of evidence. FED. R. CIV. P. 26(a)(2)(A). A witness that is retained solely to provide expert testimony must prepare and sign a detailed written report. *Id.* 26(a)(2)(B). A party must also disclose a rebuttal witness whose testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)…" FED. R. CIV. P. 26(a)(2)(D)(ii). This disclosure must be made within 30 days after the other party's disclosure, or in accordance with a stipulation or court order. *Id.*

Where a witness is not required to provide a written report, the disclosure need only state: (i) the subject matter on which the witness is expected to present expert testimony evidence under

---

[4] Constellation contends that it will be prejudiced because it "will be forced to spend significant time and money preparing to cross-examine three experts . . . without any way of knowing which of the three experts holds which opinion" and "during trial, Constellation cannot possibly know whether to object that a particular expert's testimony was undisclosed." ECF 212 at 4.

[5] LRI did not file a motion to exclude Constellation's expert disclosure. Though a court "may consider the admissibility of expert testimony *sua sponte*," this Court sees no reason to do so here with respect to Constellation's expert, David Benham. *Dillard v. Smith*, 558 F. Supp. 3d 308, 313 n.2 (W.D. Va. 2021) (quoting *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009)).

Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify. *Id.* 26(a)(2)(C). This rule is colloquially said to apply to "hybrid" fact/expert witnesses. *Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 500 (D. Md. 1997); *see Adell Plastics, Inc. v. Mt. Hawley Ins. Co.*, Civ. No. JKB-17-00252, 2019 WL 2359441, at *1 (D. Md. June 4, 2019) ("The hybrid witness exception from additional disclosure requirements applies where 'testimony is given arising out of personal observations made in the normal course of duty.'") (quoting *Nat'l R.R. Passenger Corp. v. Ry. Express, LLC*, 268 F.R.D. 211, 216 (D. Md. 2010))); *Sullivan*, 175 F.R.D. at 500 ("A witness can be a hybrid witness as to certain opinions, but a retained expert as to others."); *see also* Loc. R. 104.10 (D. Md. 2023).

"The purpose of Rule 26(a) is to allow litigants to adequately prepare their cases for trial and to avoid unfair surprise." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017) (internal quotation marks and citation omitted). Thus, "a party who fails to comply with the expert witness disclosure rules is prohibited from 'using that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or harmless.'" *Id.* (alteration in original) (quoting FED. R. CIV. P. 37(c)(1)). The Fourth Circuit has held that district courts have broad discretion and should consider the following five factors when determining whether the failure to comply with Rule 26(a) is substantially justified or harmless:

> (1) [T]he surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). "The first four factors 'relate primarily to the harmlessness exception, while the last factor, addressing the party's explanation for its nondisclosure, relates mainly to the substantial justification exception.'" *Vedula v. Becerra*, Civ. No. TDC-18-0386, 2021 WL 8316263, at *1 (D. Md. June

23, 2021) (quoting *Bresler*, 855 F.3d at 190). Notably, the exclusion of expert testimony "has traditionally been considered a severe sanction, appropriate only for willful and substantial abuse of the discovery process." *Sullivan*, 175 F.R.D. at 504; *see also Hawkins v. Barakat*, Civ. No. ELG-20-1386, 2021 WL 1294111, at *2 (D. Md. Apr. 7, 2021) ("Because it is an extreme sanction to exclude expert testimony, if the evidence is critical, this sanction is not normally imposed absent a showing of willful deception or flagrant disregard of the court order by the proponent." (internal quotation marks and citation omitted)).

## IV.  DISCUSSION

### A.  Rule 26(a)(2)

The Court finds that LRI did not comply with Rule 26(a)(2)(C)(ii) because it does not identify with particularity which witness will testify as to which opinion. *See Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 253–54 (4th Cir. 2022) (explaining that disclosures of three hybrid witnesses did not satisfy Rule 26(a)(2)(C)(ii) because the disclosures did not set out a summary of facts and opinions to which each witness was expected to testify). Nevertheless, the noncompliance is harmless, and the Court will not strike the proffered opinions of LRI's experts at this time.

First, the discovery record in this case reveals that Constellation cannot claim surprise at trial because it received adequate notice of the scope of each witness's testimony through LRI's deposition designations. LRI exchanged its rebuttal expert disclosure on November 24, 2023, and Constellation soon thereafter noticed a Rule 30(b)(6) deposition of LRI, with a comprehensive list of discrete documents and topics for examination. ECF 214 at 9–19. Constellation requested that LRI identify the designee for each topic in the notice, and LRI complied. *Id.* at 20–29. For example, LRI identified Sammons, a project manager at FCC Coleman, as the designee to testify on most

topics, including specific FORs, installations, and LRI's compliance with applicable workplans and codes. *See id.* at 9–19. LRI also designated Ruse to testify about three topics related to Constellation's selection of Aqua as a replacement contractor. *See id.* Finally, LRI designated Elam to testify solely about "LRI's last day on site at FCC Coleman," and "LRI's contract with Constellation, including all change orders and other contract documents, relating to FCC Coleman, and LRI's compliance with the same." *Id.* at 11, 20. Accordingly, Constellation received sufficient notice of the topics for which each hybrid expert witness would testify.

Second, Constellation had the opportunity to cure any lingering surprise it claims awaits at trial by taking the deposition of each designee. The deposition transcripts reflect that Constellation probed, or attempted to probe, during each witness's deposition whether a particular opinion belonged to that witness. *See, e.g.*, ECF 176-2 at 298:1–4 (Dep. Testimony of J. Sammons) ("[A]re you adopting all of these statements here, each one, 1 through 39, or is there some subset that you are adopting as the expert in this case?"); ECF 176-4 at 99:2–4 (Dep. Testimony of D. Ruse) ("Are any of these 1 through 39 statements your statements or are these the statements of Mr. Sammons or Mr. Elam?"); ECF 176-3 at 167:8–9 (Dep. Testimony of E. Elam) ("Which statements in there are yours versus Mr. Sammons?"). Constellation then proceeded to parse through each individual opinion with each witness to ascertain whether that witness held that opinion. ECF 176-2 at 298:14–16 (Dep. Testimony of J. Sammons) ("[T]his is your chance to tell me which ones of these are your opinions. Are you able to do that?"); ECF 176-4 at 163:7–11 (Dep. Testimony of D. Ruse) ("Well, I'm going to go through each sentence then and you can tell me which -- if that sentence is your statement or if that's somebody else's statement, sort of like we did for the 1 through 39."); ECF 176-3 at 167:17–18 (Dep. Testimony of E. Elam) ("Well, let's take FOR Number 1 here, FOR 1"); *id.* at 168:12–13 ("What about the next one, Number 2 for FOR 4; is that your

7

statement?"). Although LRI's witnesses could not always delineate which statements in the disclosure belonged to whom, *see, e.g.*, ECF 176-4 at 176:1–8 (Dep. Testimony of D. Ruse), Constellation has put these issues in the record, and the Court will consider any particular objections to their testimony on the motions for partial summary judgment, if appropriate, or at trial.[6] But given that Constellation had (1) adequate notice of the scope of each witness's deposition designations and (2) the ability to cure any lingering surprise at each witness's 30(b)(6) deposition, the Court does not perceive any unfair surprise awaiting Constellation as result of LRI's incomplete 26(a)(2)(c) disclosure.[7] *See Meredith v. Int'l Marine Underwriters*, Civ. No. JKB-10-837, 2011 WL 1466436, at *6 (D. Md. Apr. 18, 2011) (noting that the deposition of an expert witness allowed a party to "learn[] all the information from the deposition that would have

---

[6] The Court is also aware of Constellation's arguments supporting its motion for partial summary judgment that "LRI's designees were unprepared" and "provided non-responsive testimony." ECF 214 at 2. The Court will substantively address those arguments upon resolution of the parties' motions for partial summary judgment. In ruling on this motion, however, the Court finds that the deposition transcripts reveal that LRI's designees espoused at least some of the individual opinions from the Rule 26(a)(2)(C) disclosure. *See, e.g.*, ECF 176-4 at 168:2–4 (Dep. Testimony of D. Ruse) ("Q: Is that your statement or is that a colleague's statement? A: That's my statement.").

[7] Moreover, instead of seeking the automatic exclusion of LRI's expert opinions, Constellation could have moved to compel the requested information or sought appropriate sanctions. *See* FED. R. CIV. P. 37; *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.* 265 F.R.D. 235, 239–40 (D. Md. 2010); *Sullivan v. Glock*, 175 F.R.D. 497, 504 (D. Md. 1997). While the Court recognizes that "a party is not required to file a motion to compel complete disclosures under Rule 37(a)(2), and is well within its rights to rely on the automatic exclusion provision contained in Rule 37(c)(1)," Constellation did so "at the risk . . . that the failure to properly provide the Rule 26(a)(2) disclosures was substantially justified or harmless." *Sullivan*, 175 F.R.D. at 504–05 (footnote omitted); *see also id.* at 504 ("When counsel foregoes filing a motion to compel, anticipating that the trial judge will exclude the expert testimony on the basis of inadequate 26(a)(2) disclosures . . . the court must decide whether to impose what has traditionally been considered a severe sanction, appropriate only for willful and substantial abuse of the discovery process."). Because there is no evidence, at this stage, that LRI deliberately evaded or abused the discovery process, the Court declines to impose the extreme sanction Constellation now seeks. *See Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 686 (D. Md. 2012).

been included in a proper expert report [and the party] was thus able to cure any surprise that would otherwise have resulted from . . . the omission").

For similar reasons, the Court finds that permitting the evidence will not disrupt the upcoming bench trial, at which the Court will be capable of determining the appropriate weight and probative value to give the testimony under the relevant standards. *See Alvarez v. Alvarez*, Civ. No. PX-17-1010, 2017 WL 2472219, at *3 (D. Md. June 8, 2017).

As to the fourth factor, the importance of the testimony is clear in light of the parties' pending motions for partial summary judgment. *Meredith*, 2011 WL 1466436, at *6. One of those motions is based, in part, on Constellation's claim that undisputed evidence demonstrates LRI breached the Subcontract based on the testimony of Sammons and Elam. *See, e.g.*, ECF 177-1 at 8–9. LRI has also asserted an affirmative defense that Constellation failed to mitigate damages, based on the deposition testimony of Ruse that Constellation's selection of, and its payments to, Aqua were unreasonable.[8] *See* ECF 194-1 at 12. In other words, the expert opinions regarding LRI's performance of the plumbing work and Constellation's selection and oversight of Aqua are crucial components to the issues in this case. *See Meredith*, 2011 WL 1466436, at *6; *see Allegis Grp., Inc., v. Bero*, Civ. No. ELG-22-686, 2023 WL 5989438, at *19 (D. Md. Sept. 1, 2023) (noting that expert testimony "can often prove critical"); *Moore v. Peitzmeier*, Civ. No. TDC-18-2151, 2020 WL 94467, at *13 (D. Md. Jan. 7, 2020) ("[A] court may admit evidence that a party failed to disclose adequately where the other party knew that the issue to which the evidence related 'was a central issue in the case.'" (quoting *Bresler v. Wilmington Tr. Co*, 855 F.3d 178, 193 (4th Cir.

---

[8] The Court is aware of Constellation's objection to Ruse's affidavit that LRI attached to its response to Constellation's motion for partial summary judgment. *See* ECF 213 at 15–17. The Court will address this specific objection, along with whether undisputed evidence shows that LRI is entitled to pursue this affirmative defense, when it resolves the summary judgment motions.

2017))). If, at trial, LRI fails to establish that any particular expert testimony is reliable or relevant, the Court will exclude it under Federal Rule of Evidence 702. *See, e.g.*, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). But here, given that Constellation has notice of the general boundaries of what each witness can testify to at trial, a blanket exclusion of LRI's expert opinions based on noncompliance with Rule 26(a)(2)(C)(ii) is excessive and would severely harm LRI's legal position. *Prusin v. Canton's Pearls, LLC*, Civ. No. JKB-16-605, 2017 WL 3492163, at *5 (D. Md. Aug. 15, 2017).

On the fifth factor, LRI has not asserted any justification for its failure to comply with Rule 26(a)(2)(C)(ii). But upon consideration of the first four factors, LRI's noncompliance is harmless. *See Wiseman v. Walmart Stores, Inc.*, Civ. No. 1:16-cv-04030-SAG, 2017 WL 2865013, at *3 (D. Md. July 5, 2017) (noting that when an untimely disclosure was not substantially justified, "the real inquiry is whether the error was harmless"); *Vedula v. Becerra*, Civ. No. TDC-18-0386, 2021 WL 8316263, at *2 (D. Md. June 23, 2021) (denying a motion to exclude opinion testimony under the harmless exception even though the proponent failed to justify its failure to comply with Rule 26(a)(2)(C)). The Court emphasizes, however, that the finding of harmlessness applies only to those facts and opinions that LRI's witnesses actually disclosed at their depositions, and that their testimony at trial will therefore be limited strictly to those facts and opinions.[9] *Meredith*, 2011 WL 1466436, at *7; *Price v. Atl. Ro-Ro Carriers, Inc.*, Civ. No. CCB-11-1735, 2017 WL 2876473, at *6 (D. Md. July 6, 2017) (explaining that allowing expert witnesses to offer new opinions beyond those expressed in depositions would run afoul of the test set out in *Southern States*).

---

[9] As such, LRI should come to trial prepared with citations to deposition testimony if it wishes to use a particular witness opinion from its Rule 26(a)(2)(C) disclosure.

B. **Expert Testimony**

For similar reasons, the Court does not find it appropriate to broadly exclude LRI's expert opinions based on alleged "legal conclusions" and "factual recitations with no expert analysis." ECF 175 at 6–7. As to legal conclusions, Constellation argues that its three corporate designees will testify about "the ECM2 scope of work required of LRI by the Blanket Subcontract" and at least sixteen of the thirty-nine opinions "include a legal conclusion about whether a particular item was within LRI's contractual scope of work." *Id.* at 6. Constellation is correct that contract interpretation is a matter of law and "[e]xpert testimony typically cannot be offered to support the interpretation of a contract term." *James McHugh Constr. Co. v. Travelers Prop. Cas. Co. of Am.*, 223 F. Supp. 3d 462, 472 (D. Md. 2016); *see also, e.g.*, *Forrest Creek Assocs., Ltd. v. McLean Sav. & Loan Ass'n*, 831 F.2d 1238, 1242 (4th Cir. 1987). However, the Court's review of LRI's Rule 26(a)(2)(C) disclosure reveals that some opinions (or portions thereof) contain improper legal conclusions, but others do not. Accordingly, the Court declines to broadly exclude the entirety of LRI's expert opinions, keeping in mind it will not admit improper legal conclusions at trial or rely on any such legal conclusion offered in these opinions when deciding the issues in this case.

As to the factual recitations, Constellation argues that all three witnesses lack personal knowledge of the facts in this case "because none was physically present at FCC Coleman during the relevant time period," and it posits that LRI attempts to circumvent this evidentiary issue by improperly designating the witnesses as experts. ECF 175 at 7–8. Constellation's first argument fails with respect to Elam and Sammons, because the record shows that they have relevant factual evidence pertaining to LRI's work at FCC Coleman. Sammons worked on-site at FCC Coleman at the outset of the Subcontract and departed at least two years after LRI commenced its work. *See* ECF 176-2 at 22:16–18, 124:14–16 (Dep. Testimony of J. Sammons). Elam also worked on-site

11

at FCC Coleman in an administrative role with Sammons on the project. *See* ECF 176-3 at 16:5–14 (Dep. Testimony of E. Elam). As a result, both have at least some knowledge of the facts surrounding LRI's performance on the Subcontract during the relevant time period. The testimony of Ruse is less clear, given that he has never been to FCC Coleman and based his opinions about Aqua generally on "some previous experience in working in the construction industry" and "in BOP prisons with BOP prison staff." ECF 176-4 at 183:13–15 (Dep. Testimony of D. Ruse). To the extent he, or LRI's other experts, rely on inadmissible evidence such as hearsay, the Court will exclude such opinion testimony at the appropriate time. At this juncture, however, the Court again declines to broadly exclude LRI's three expert opinions based on Constellation's generalized objections.[10]

## V.   CONCLUSION

For the reasons stated above, the Court DENIES Constellation's motion to exclude LRI's proffered expert opinions, ECF 174.  A separate Order follows.

Dated: February 8, 2024                                     /s/
                                                  Stephanie A. Gallagher
                                                  United States District Judge

---

[10] This Court also declines to parse through each witness's testimony at this juncture to determine which portions may be inadmissible, as those objectionable portions may not even be offered at trial.